NATHAN FLEISCHER, PLAINTIFF, v. JAMES DRUG STORES, INC., A CORPORATION, MAX EDLIN AND LOUIS GARAWITZ, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided March 21, 1950.

Mr. *Harry Kay,* attorney for plaintiff.

Mr. *Samuel M. Goodman,* Messrs. *Koehler, Augenblick & Freedman* (Mr. *Bernard Freedman* appearing), attorneys for defendant, James Drug Stores, Inc.

Messrs. *Riker, Emery & Danzig* (Mr. *Charles W. Kappes, Jr.,* appearing), attorneys for defendant, Max Edlin.

Mr. *Richard Congleton,* attorney for defendant, Louis Garawitz.

STEIN, J. S. C. This suit is for specific performance, discovery and accounting and for damages. Heretofore the matter came before a Vice-Chancellor in the former Court of Chancery where the complaint was dismissed. On appeal from that decree the Supreme Court reversed the decree (*Fleischer v. James Drug Stores,* 1 *N. J.* 138), and remanded the cause for further proceedings not inconsistent with its opinion.

The matter is now before me on final hearing. Plaintiff on September 21, 1939, purchased from the defendant Max Edlin his retail pharmacy located at 261 Franklin Avenue, in Nutley, which he has ever since conducted as a retail drug store. On April 15, 1940, plaintiff made written application

for membership in James Drug Stores, Inc., a paragraph of which application reads as follows:

"It is distinctly understood, that if I am accepted as a member of the J. D. S., I shall have the privilege of resigning at any time in the future, providing I forward my resignation to you in writing, subject to 60 days notice, and further providing that I have paid up for my service including the 60 days period, for which 60 day period it shall be discretionary upon you to serve me or not, and also that the right is reserved by you to cancel such membership if, in your judgment and after being notified, according to the rules and regulations so set forth, I do not properly cooperate in carrying out the said Plan."

James Drug Stores, Inc., was created to serve the common trade interests of retail druggists who wished to join the enterprise. By his application plaintiff sought to be and was accepted as a member and so became affiliated with the corporation as a "James Cut-Rate Retail Druggist" for the furtherance of the common plan of the corporation, and agreed to buy James merchandise in sufficient quantities to be recognized as a James Cut-Rate Drug Store, and such other merchandise which James Drug Stores, Inc., would make available to him for that purpose and to dispose of the same and not continue any other competitive line or agency plan carried by him. Plaintiff also agreed to become a stockholder of the corporation, "at its option," subject to the corporation's right to "repurchase" the stock "at the termination of" his "membership for any reason whatsoever and at the price originally paid or credited" to him for the stock.

Plaintiff's application was approved by the directors of the corporation and he was required by signs and window transfers as may be authorized by "J. D. S." or such other means as may be approved to establish and identify his place of business as a "J. D. S." store. "Co-operation" was required of him as a member in the carrying out of "buying, advertising and merchandising programs, * * * as well as featuring such merchandise at prices fixed" by the corporation's directors from time to time, in order "to create demand and acceptance for such merchandise by the public." The mem-

bership agreement provided that in the event of the conviction of a member of crime, or if he became "guilty of conduct which in the opinion of the directors is detrimental to the reputation or principles of the J. D. S., or adverse to the objects of the said Plan, and if such conduct is not corrected after notice to the member, the membership may, at the option of the Board, be cancelled according to such rules set down by them, or by their by-laws or resolutions." Lack of co-operation in carrying out the "Plan" was by the contract a specific ground for cancellation of membership, in which event all "rebates, surcharges, overcharges or profits," accrued but not yet declared were forfeited. Plaintiff's right of member-ship was not assignable by him without the consent of the directors.

On April 15, 1940, his application for membership was accepted and plaintiff purchased six shares of the capital stock of the corporation at $25 a share. He also acquired another forty-four shares by the application of refunds and other pay-ments at the same price, so that he now holds a total of fifty shares of stock. Nine stock certificates issued to the plaintiff were put in evidence. On the reverse side of each certificate appear excerpts from the by-laws of the corporation which read:

"Section 2.—Par. 'c'—To grant all stockholders merchandising, buying, advertising and supervising privileges upon such terms as the Board of Directors may determine from time to time, on the ex-press condition, however, that such merchandising privileges, as aforesaid, may be revoked by a majority vote of all the members of the Board of Directors at any regular or special meeting of the said Board, whenever such revocation may be deemed to the best interest of the company."

"Par. 'g'—The holding of stock shall not in itself, therefore, en-title the stockholders to purchasing, advertising, supervising and merchandising or other privileges of this company, since the Board of Directors may grant or withhold such privileges in its discretion, but such privileges, if granted, shall be upon the conditions set forth in these By-Laws."

At the end of the excerpts plaintiff affixed his signature. Following the excerpts appears a copy of Article IX, which gives J. D. S. a lien in accordance with the provisions of its

certificate of incorporation on all outstanding stocks for debts and which requires stockholders to assign or transfer their shares in blank to the corporation through its secretary, which stock is to be held in trust for the purposes provided in the by-laws, and the stockholder is to be given a receipt for his shares of stock. Plaintiff assigned his stock and holds receipts therefor.

The defendant corporation and the two individual defendants Max Edlin and Louis Garawitz are charged with conspiracy to deprive the plaintiff of the benefit of his contract and to have caused his expulsion as a member of the corporation. The individual defendants are said to have maliciously and unjustifiably interfered with plaintiff's membership in the corporation. Damages, compensatory and exemplary, are demanded.

Exploring the evidence adduced on the hearing I find no credible evidence in support of the charge that the defendants Max Edlin and Louis Garawitz conspired with the defendant corporation to deprive the plaintiff of his contract, nor that they maliciously or unjustifiably interfered with his membership in the corporation. What the corporation did through its board of directors was to discontinue and revoke the plaintiff's merchandising, buying, advertising and supervising privileges as permitted by its constitution and by-laws "for the best interest of the company."

According to the minutes of the defendant corporation in evidence and the testimony adduced at the hearing, the plaintiff who had failed to co-operate in the purchasing of drugs from the defendant corporation and to show eagerness to sell the controlled brands of merchandise, interest in co-operative advertising, uniform window displays in his store windows was the subject of discussion at a board of directors' meeting held on the nineteenth of March, 1946. According to the minutes the "most culpable of the members who violated the rules" was the plaintiff Fleischer. The minutes also recite complaints to the effect that the plaintiff was not conducting his pharmacy professionally, booking horse races, conduct unbecoming in his approach to young women and children, and

complaints by physicians. The minutes then set forth a motion unanimously carried, directing plaintiff and others to appear at the next board meeting "for the purpose of giving them an opportunity to adjust and remedy this condition before their services were suspended."

On June 19, 1946, at a regular meeting of the board of directors the plaintiff was confronted with the mentioned charges. He denied them. It was then determined, according to the minutes, "that if any further complaints were made as to his (plaintiff's) lack of co-operation with the company, and more particularly, as to his conduct in the operation of his store, that the services to him and the store would be discontinued without any further notice. He promised to co-operate fully thereafter and to become an exemplary member."

The minutes of December 16, 1947, of the board of directors show that the plaintiff was again under discussion by the board, as folllows: "It again appeared that his purchases in comparison to his sales were low, that his controlled brand purchases were slightly better than before, but that his personal operation of his store was terrible, * * * the same things that had heretofore been brought before the Board" were still complained of. A resolution was then adopted which reads: "In accordance to Article VI, section 2, paragraph C and paragraph G, of the By-Laws of this Company, it is resolved that all merchandising, buying, advertising, and supervising privileges formerly granted to Nat Fleischer, trading as The Edlin Pharmacy of Nutley, N. J., be discontinued and revoked for the best interest of the company."

On January 22, 1948, a special meeting of the board of directors was held. The plaintiff was present with his attorney as a result of his request for a hearing. The board decided to review the matter at a special meeting to be held January 27, 1948. Meeting was called on the adjourned date and the board of directors refused to rescind its previous action.

Subsequently the corporate defendant offered to repurchase the stock of the plaintiff, which offer he declined. His contract of membership is under the Constitution and By-Laws

separate and distinct from his right as a stockholder. His application to become a member of "J. D. S., Inc.," recited that he may become a "stockholder of the J. D. S., Inc., at its option, in accordance to its requirements," etc. And under the Plan one could become a member without becoming a stockholder, and his membership application reserved to the corporation the right to cancel such membership, if in its judgment after the plaintiff was notified according to the rules and regulations, he did not properly co-operate in carrying out the Plan of "J. D. S., Inc."

The Constitution and By-Laws formed a contract between the plaintiff and the corporate defendant. The By-Laws conferred a sweeping power upon the corporate defendant to cancel his membership if in the judgment of its board of directors he did not properly co-operate in carrying out the Plan. As to the charge of lack of co-operation in furtherance of the Plan of J. D. S., Inc., the corporation could well judge from the quantities and kinds of merchandise it furnished to plaintiff during the period of his membership and from it find whether the plaintiff did or did not as he agreed in his application properly co-operate in carrying out the said Plan. Moreover, it was by the plaintiff's own testimony established on the hearing that as far back as 1945 it was found that he was not co-operating and that he was at that time assessed a penalty under the By-Laws which he paid and promised to do better.

He denies attendance upon the board of directors at the meetings hereinabove recited in response to complaints against him. His testimony as to this was evasive and contradictory and I am satisfied, notwithstanding his denial, that he was present. On each occasion when complaint was made of his lack of co-operation in the making of sales, conduct of his store, dressing of windows and the other things which the evidence revealed were required of him to be done in furtherance of the corporate defendant's plans in the interest of the corporation, he failed to comply.

The plaintiff's merchandising, buying, advertising and supervising privileges under Article VI, Section 2, Paragraph

C of the Constitution and By-Laws reserved to the board of directors the right to revoke the same by a majority vote of all members of the board of directors at any regular or special meeting when such revocation was deemed by the board of directors to be to the best interest of the company. Under this provision hearing was not essential.

In *State v. Maas*, 4 *N. J. Misc.* 230, Henry V. Walker at a special meeting of the board of directors of Maas & Waldstein Company, was removed from office by the board and Mr. Maas chosen to succeed him. Walker had notice of the meeting, but the notice did not state that his removal was to be considered. Walker did not attend the meeting. The proceeding (*quo warranto*) sought to test the right of Maas and of himself. The by-law in that case provided: "All officers and agents shall be subject to removal at any time by the affirmative vote of a majority of the whole board of directors." Speaking of the by-law provision the Supreme Court said: "It is a protective instrument placed in the hands of the corporate directors to be wielded at discretion, and of its existence, of course, the relator had knowledge when he took office. * * * This being true, the by-law in question would be futile in its purpose if the existence of cause of removal and notice of hearing be essential to the exercise of the powers it confers."

Later, Walker brought suit for his salary at the Circuit where a nonsuit was entered against him. On appeal, the Court of Errors and Appeals, *Walker v. Maas & Waldstein Co.*, 104 *N. J. L.* 341, 342, said:

"* * * He (Walker) was duly removed from his office on February 2d, 1925, by a vote of the board of directors, the legality of which action he contested on *quo warranto* proceedings in the Supreme Court, where the action of the board was upheld. *State v. Maas*, 132 *Atl. Rep.* 322; 4 *N. J. Mis. R.* 230. His duties were of a supervising character as president and general manager of the company, and were generally described as duties arising from his position as president and manager of the company. The plaintiff's claim for the month of February was conceded, and the court directed a verdict for that amount, but nonsuited him as to the balance of the claim, upon the ground that in virtue of section three of the by-laws of the defendant company, which furnished the tenure of the plain-

tiff's official employment, his right to the salary ceased with the termination of his office as president. That section provided that 'all officers and agents shall be subject to removal at any time by the affirmative vote of a majority of the whole board of directors.' "

"The legal effect of that section having been determined by the Supreme Court in the *quo warranto* proceedings, as conferring 'a sweeping power of removal on the board of directors,' when procured, as in this instance, by a majority vote, the plaintiff, now upon the doctrine of *res adjudicata*, occupies in the case, *sub judice*, the legal status of an officer or agent, lawfully removed on February 2d, 1925."

In *Cohen v. Camden Refrigerating, etc., Co.*, 129 *N. J. L.* 519, the plaintiff brought suit for his salary and the Court below directed judgment in favor of the defendant. The by-laws of the company in that case provided as follows: "The Board of Directors may remove any officer, agent or employee at any time and within the period for which such person was elected and employed and all persons shall be elected and employed subject to the provisions hereof."

On appeal from the judgment below the Court of Errors and Appeals held:

"The learned trial judge considered that the legal question thus raised was controlled by the case of *Walker v. Maas*, 4 *N. J. Mis. R.* 230, and *Walker v. Maas & Waldstein Co.*, 104 *N. J. L.* 341. * * *

" 'The legal question presented is whether or not a corporation which enters into a contract of employment with an agent for a definite period is liable for damages for the discharge or removal of that agent without cause where there is a by-law of the said corporation permitting the removal of its agent' * * * 'when the agent, officer or employee had or was chargeable with knowledge of the existence of the by-law and had as director voted for its adoption.' "
* * *

"Our Corporation Act, among other things, provides: (*N. J. S. A.* 14:7-6)—'Every corporation organized under this title shall have a president, secretary and treasurer who shall be chosen by the directors or stockholders, as the by-laws may direct, and who shall hold office until others are chosen and qualified in their stead. *It may have other officers, agents and factors who shall be chosen in such manner and for such terms as the by-laws may direct.*' * * * By virtue of this language the corporation was authorized to regulate its affairs as it considered its business welfare required."

Cited in the opinion are *State ex rel. Walker v. Maas, supra,* and *Walker v. Maas & Waldstein, supra.*

In the instant case the board of directors of James Drug Stores, Inc., after notice to plaintiff that he did not properly co-operate in carrying out the Plan of the corporation, exercised the right reserved to it under the Constitution and By-Laws to cancel his membership.

The defendant corporation by its counterclaim seeks specific performance of the clause in the contract of membership set forth in plaintiff's application which reads:

"It is further understood that if I am accepted as a member of the J. D. S., Inc., that I shall also become a stockholder of the J. D. S., Inc., at its option, in acordance to its requirements, and subject to its constitution, rules, regulations, resolutions, by-laws and all its present and future amendments and supplements thereof, and at the option of the J. D. S., Inc., the aforesaid stock obtained by me by purchase or otherwise, may be repurchased at the termination of my membership for any reason whatsoever, and at the price originally paid or credited to me for the aforesaid stock."

It is in proof that the defendant corporation offered to repurchase plaintiff's stock after the termination of his membership in the corporation in accordance with the cited provision at the price which plaintiff paid therefor in the sum of $25 per share or for a total of $1,250. The stock in the company is of a unique character in that it is not obtainable on the market. Plaintiff has refused to accept the tender and to transfer the stock. Likewise plaintiff, although requested so to do, has failed to remove the signs and identifying characteristics of James Drug Stores, Inc., from his store. The defendant corporation is entitled to specific performance.

Judgment will be entered in favor of the defendant corporation and the individual defendants in accordance with the foregoing.